# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

**JANENE PRUITT,**

    Plaintiff,

v.

**EQUIFAX INFORMATION SERVICES, LLC, et al.,**

    Defendants.

CASE NO. 3:24 CV 2190

JUDGE JAMES R. KNEPP II

**MEMORANDUM OPINION AND ORDER**

## INTRODUCTION

On September 11, 2025, this Court dismissed without prejudice *pro se* Plaintiff Janene Pruitt's claims in this action for failure to prosecute. *See* Doc. 23; Fed. R. Civ. P. 41(b). Currently pending before the Court is Defendant TransUnion, LLC's ("TransUnion") Motion to Convert that dismissal order to one dismissing Plaintiff's claims with prejudice. (Doc. 24). Plaintiff opposed (Doc. 26), and separately moved to reinstate her claims, *see* Doc. 25; Fed. R. Civ. P. 60(b). TransUnion replied to Plaintiff's opposition and opposed Plaintiff's Motion to reinstate. (Doc. 27). After the time to reply to Defendant's opposition expired, Plaintiff filed a Motion for Leave to File Sur-Reply. *See* Doc. 28; L.R. 7.1(d).

For the foregoing reasons, the Court GRANTS TransUnion's Motion to Convert, DENIES Plaintiff's Motion to Vacate Dismissal Order and Reinstate Case, and DENIES AS MOOT Plaintiff's Motion for Leave to File Sur-Reply.

## BACKGROUND

Plaintiff brought multiple claims under the Fair Credit Reporting Act seeking relief against Defendants TransUnion, Equifax Information Services, LLC ("Equifax"), and Experian Information Solutions, Inc. ("Experian"). *See generally* Doc. 1. In her Verified Complaint, Plaintiff listed her address as 2336 South Avenue Toledo, Ohio 43609. *Id.* at 1. On March 23, 2025, the Court noticed the parties of a case management conference to be held on April 14, 2025. (Doc. 19). The Court mailed this notice to Plaintiff, *see id.*, and Plaintiff participated in both the creation of the Joint Report of Parties' Planning meeting (Doc. 18) and the April 14 case management conference (Doc. 19). The Court's Minute Order detailing the case management conference, including the decision to schedule a telephone status conference for July 21, 2025, was mailed to Plaintiff. *Id.* Plaintiff did not appear at the July 21 telephone status conference. (Doc. 22). At this conference, the Court ordered Plaintiff to submit a written settlement demand to each Defendant by August 8, 2025, and further set another telephone status conference for September 10, 2025. *Id.* On the record, and in the minutes of the proceeding, the Court warned Plaintiff that failing to comply with the Order or to attend future status conferences could result in sanctions, up to and including dismissal of her claims against all Defendants. *Id.* Again, the minutes of this telephone status conference, which included the Order regarding written settlement demands and the future telephone conference, were mailed to Plaintiff at the address provided in her Complaint. *Id.*

Nevertheless, Plaintiff again failed to make an appearance at the September 10 telephone status conference. *See* September 10, 2025, Docket Entry. Further, Defendants Experian and TransUnion indicated Plaintiff had failed to provide them with a settlement demand pursuant to the Court's July 21 Order. Defendants Experian and Equifax also confirmed they received email

2

communications from the Plaintiff's email address to which the Court had sent the dial-in access information prior to each telephone status conference. At the September 10 conference, the Court granted Defendants' oral motion to dismiss Plaintiff's claims for failure to prosecute. *Id.*; Fed. R. Civ. P. 41(b). In its subsequent Order, the Court specified that such dismissal would be without prejudice, but granted leave for Defendants to file a motion requesting the Court enter dismissal with prejudice. (Doc. 23). The Court mailed this order of dismissal to Plaintiff, *see id.*, and Plaintiff reemerged in an attempt to defeat TransUnion's Motion to Convert and to resurrect her FCRA claims, *see* Docs. 25, 26.

**APPLICABLE STANDARDS**

District courts maintain "substantial discretion" in determining whether to dismiss a Plaintiff's claims for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999) (citing *Little v. Yeutter*, 984 F.2d 160, 162 (6th Cir. 1993)). A district court's decision to dismiss with prejudice under Rule 41(b) may only be reversed if it "committed a clear error of judgment." *Id.* (citing *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989)). The same standard applies to a district court's determination whether to reinstate an action pursuant to Federal Rule of Civil Procedure 60(b). *See Tyler v. Anderson*, 749 F.3d 499, 509 (6th Cir. 2014).

**DISCUSSION**

<u>TransUnion's Motion to Convert</u>

A court may, on the motion of any defendant, dismiss with prejudice a plaintiff's claims when the plaintiff "fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order." Fed. R. Civ. P. 41(b). While involuntary dismissal under Rule 41(b) is undoubtedly a "harsh sanction," it is justified where the record clearly demonstrates the plaintiff engaged in

3

"contumacious conduct" where contumacious "is defined as 'perverse in resisting authority' and 'stubbornly disobedient.'" *Schafer v. City of Defiance Police Dept.*, 529 F.3d 731, 736–37 (6th Cir. 2008) (first quoting *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005), then quoting *Contumacious*, Webster's Third New International Dictionary 497 (1986)). Even where clear contumacious conduct is lacking, courts apply four equitable factors to determine whether dismissal is warranted under Rule 41(b):

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Knoll*, 176 F.3d at 363. No one factor in this analysis is dispositive. *Id.* And while the factors are applied "more stringently in cases where the plaintiff's attorney's conduct is responsible for the dismissal" as it is generally preferable to "directly sanction[] the delinquent lawyer rather than an innocent client," Plaintiff here proceeds *pro se* and cannot rely on the failures of a representative to avoid the harsh sanction of dismissal. *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 367 (6th Cir. 1997) (quoting *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1095 (6th Cir. 1994)).

Under the first factor, a plaintiff evidences willfulness, bad faith, or fault where their conduct displays "either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings." *Schafer*, 529 F.3d at 737 (quoting *Wu*, 420 F.3d at 643). Here, Plaintiff has repeatedly failed to attend scheduled proceedings and to comply with the Court's July 21 Order compelling her to submit a written settlement demand to each Defendant. Plaintiff asserts the failure to attend the scheduled conferences was due to a "lack of notice" of the proceedings rather than a deliberate or reckless disregard thereof. (Doc. 26, at 11). Plaintiff attaches an affidavit in support of this assertion, stating she "did not receive notice of the Court's

July 21, 2025, or September 10, 2025[,] minute hearings" either by "mail, email, or any other means." (Doc. 26-1, at 1). Further, Plaintiff states she "learned of the September 25, 2025[,] dismissal order"[1] and "acted immediately to prepare and file a motion under Rule 60(b)(1) seeking to vacate the dismissal and reinstate" the case. *Id.*

Initially, Plaintiff's affidavit lacks factual information sufficient to support its conclusions. First, Plaintiff does not explain how she received adequate notice of the April 14 case management conference, which she successfully attended, but not the subsequent two status conferences. Each notice was sent by mail to the same address, and Plaintiff does not claim she changed addresses or otherwise lost the ability to receive and read mail sent to the address provided in her Complaint. Similarly, as confirmed at the September 10 conference, Plaintiff received the dial-in information for each phone conference at the same email address, and Plaintiff does not claim she changed her primary email address or otherwise stopped receiving these emails. *See Yeschick v. Mineta*, 675 F.3d 622, 629–30 (6th Cir. 2012) (citing *Casimir v. Sunrise Fin., Inc.*, 299 F. App'x 591, 593 (7th Cir. 2008)) ("Regardless of the method of communication utilized (posted mail or email), it is the party, not the court, who bears the burden of apprising the court of any changes to his or her mailing address."). Finally, the July 21 conference was set at the April 14 case management conference, which Plaintiff attended. On the record, Plaintiff indicated her assent to scheduling this subsequent conference for July 21. At the very least, then, Plaintiff was directly aware of the need to attend the July 21 conference, and never notified the Court she failed to receive the requisite dial-in information or would be unable to attend.

---

1. The Court issued an order dismissing Plaintiff's claims on September 10, 2025, not September 25, 2025. This latter date is when TransUnion filed its Motion to Convert. It is not clear from Plaintiff's affidavit which filing provided her with notice of her case being dismissed.

5

Second, Experian, but no other Defendant, notified the Court at the September 10 conference it had received a settlement demand from Plaintiff in accordance with the Court's July 21 order. Thus, it appears Plaintiff similarly received the minutes of the July 21 telephone status conference and the order contained therein compelling her to submit settlement demands to *each* Defendant. Nevertheless, Plaintiff does not assert she did anything other than, at most, comply only partially with the Court's July 21 Order. (Doc. 26-1). Plaintiff does not attempt to reconcile such discrepancies, instead claiming, without specificity, that she lacked notice of these proceedings. A naked assertion of a lack of notice, without further explanatory information, does not relieve Plaintiff of her continued "duty to monitor the docket" regardless of the medium of communication employed by the Court. *Yeschick*, 675 F.3d at 630 (citing *Kuhn v. Sulzer Orthopedics, Inc.*, 498 F.3d 365, 370–71 (6th Cir. 2007)). As a result, the Court concludes Plaintiff's repeated failure to appear at telephone status conferences, combined with failing to adhere to the Court's July 21 Order, constitutes a "reckless disregard for the effect of [her] conduct on" these proceedings, *Schafer*, 529 F.3d at 737 (quoting *Wu*, 420 F.3d at 643), and "contumacious conduct," *Knoll*, 176 F.3d at 364.

The second factor also weighs in favor of dismissing Plaintiff's claims with prejudice. While Plaintiff is correct to identify that mere delay is insufficient to establish prejudice, *see* Doc. 26, at 12; Doc. 28, at 3, prejudice may be found where the plaintiff's conduct caused the opposing party to waste "time, money, and effort," *Harmon*, 110 F.3d at 368. Here, Defendants were required to attend multiple status conferences Plaintiff did not attend, which resulted in a waste of time and resources. Defendants further notified the Court at the September 10 telephone status conference that they had spent time and resources fruitlessly attempting to contact Plaintiff regarding her discovery requests and, in Experian's case, her settlement demand. As a whole,

Plaintiff's actions caused more than a mere delay, as Defendants were repeatedly required to expend additional time and resources in light Plaintiff's absences from conferences and failure to reply to correspondence.

The Court provided Plaintiff with an unequivocal warning that her continued failure to attend status conferences and comply with the Court's orders could constitute dismissal. *See* Doc. 22 ("Plaintiff is advised that failure to comply with this Order, or any further failure to appear for scheduled proceedings, may result in sanctions, up to and including dismissal of the case for failure to prosecute. *See* Fed. R. Civ. P. 41(b)."). Plaintiff's only discussion of this factor repeats the lack of notice argument she laid out for the first factor, which the Court has already found unpersuasive. (Doc. 26, at 12–13). The third factor thus favors dismissal with prejudice under Rule 41(b). *See Knoll*, 176 F.3d at 363.

Finally, the Court finds the fourth factor supports neither party. Plaintiff is incorrect to suggest Sixth Circuit precedent applying Rule 41(b) *requires* a district court to expressly consider or apply sanctions lesser than dismissal. *See* Doc. 28, at 4.[2] Rather, the Sixth Circuit "never held that a district court is without power to dismiss a complaint, as the first and only sanction, solely on the basis of the plaintiff's counsel's neglect." *Harmon*, 110 F.3d at 368. And, given the fact that the factors need not be applied as stringently where, as here, a plaintiff's own conduct, as opposed to that of their attorney, creates the specter of dismissal under Rule 41(b), this Court's decision not to expressly articulate lesser sanctions does not clearly cut in Plaintiff's favor. *Id.* at 367. Finally, the Court's July 21 Order did advise Plaintiff that failure to comply could result in sanctions "up to and including" dismissal under Rule 41(b), meaning this Court was at all times cognizant of its

---

2. While Plaintiff's Motion for Leave to File Sur-Reply is denied as moot in light of the Court's rulings on the other pending motions, the Court nevertheless considers the arguments contained therein and finds they do not meaningfully impact the Court's analysis or conclusion.

authority to impose sanctions less severe than dismissal. Its decision not to impose such lesser sanctions is rooted in Plaintiff's failures to comply with this Court's Orders and scheduling decisions, not this Court's own failure to "manifest[] consideration of less drastic sanctions." *Id.* at 368. Nevertheless, because the Court did not expressly enumerate or impose lesser sanctions, the Court finds this fourth and final factor favors neither party.

Whatever substantive standard applies, then, whether it be the presence of "contumacious" conduct or the four factors outlined in *Knoll*, Plaintiff's conduct in this litigation is sufficient to warrant dismissal with prejudice under Rule 41(b). Specifically, the Court finds Plaintiff's repeated failure to attend phone conferences and failure to adhere to the Court's July 21 Order, combined with the lack of meaningful explanation for the alleged lack of notice causing these failures, constitutes a "contumacious" refusal to recognize the authority of this Court. Similarly, because three of the four factors cut against Plaintiff, and the remaining factor does not meaningfully cut in her direction, dismissal with prejudice is warranted under *Knoll* factors. *See Prime Finish, LLC v. ITW Deltar IPAC*, 608 F. App'x 310, 315 (6th Cir. 2015) (analyzing the combined weight of the *Knoll* factors).[3]

---

3. The Court also rejects Plaintiff's argument that Defendant's Motion may be denied solely on its lack of compliance with this Court's Local Rules. (Doc. 26, at 9–10; Doc. 28, at 1–2, 4). However, Defendant's Motion to Convert presents only technical violations of the Local Rules, including failing to file separately the motion and attached memorandum, *see* L.R. 7.1(c), and failing to include a certification regarding the length of the memoranda, *see* L.R. 7.1(f). These violations, however, are entirely unrelated to the merits of Defendant's arguments under Rule 41(b) and, despite lacking a 7.1(f) certification, Defendant's arguments are well within the page limit established by that rule. Thus, contrary to Plaintiff's assertions, the Court does not find any Local Rule violations contained in Defendant's Motion to Convert independently constitute sufficient grounds to warrant denial of such Motion.

Plaintiff's Motion to Vacate and Reinstate

Next, the Court turns to Plaintiff's Motion to Vacate Dismissal Order and Reinstate Case. (Doc. 25). *See, e.g.*, *Fox v. Wofford*, 2016 WL 830065, at *1–2 (W.D. Ky.) (construing a motion to "reopen" the case as a motion for relief from the judgment under Rule 60(b) after the plaintiff's claims were dismissed pursuant to Rule 41(b)); *see also* Fed. R. Civ. P. 60(b). Rule 60(b) lists multiple circumstances justifying a court's decision to "relieve a party or its legal representative from a final judgment, order or proceeding." Fed. R. Civ. P. 60(b).

Plaintiff's Motion focuses solely on Rule 60(b)(1), which provides a court may relieve a party from a judgment where such judgment was the result of the party's "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Plaintiff's argument hinges on whether her failure to attend scheduled conferences and comply with this Court's July 21 Order constitutes mere "excusable neglect" or rises to the level of reckless or willful conduct. Factors bearing on that inquiry include "the length of the delay, the reason for the delay, whether the movant acted in good faith, the potential impact of the delay on judicial proceedings, and the danger of prejudice to the other party." *Capitol Indem. Corp. v. Jellinick*, 75 F. App'x 999, 1001 (6th Cir. 2003) (citing *Jinks v. AlliedSignal, Inc.*, 250 F.3d 381, 386 (6th Cir. 2001)).

Initially, it is unclear whether any meaningful daylight exists between the "excusable neglect" factors and those the Court already determined support dismissal under *Knoll* and Rule 41(b). Regardless, the Court's prior finding that Plaintiff's conduct may fairly be described as "contumacious" and evidencing a "reckless disregard" for the effect of her actions on the Court's proceedings and the parties to them is sufficient to warrant denial of her Rule 60(b) motion. Plaintiff's conduct described herein, as explained with respect to Defendant's Rule 41(b) motion,

rises above merely negligently failing to appraise herself of the Court's scheduled proceedings and orders.

Even if such conduct could fairly be described as "negligent" it is far from excusably so, particularly in light of Plaintiff's abject failure to explain how she received adequate notice of some proceedings but not others or was able to serve a settlement demand on one Defendant but not the others. Nor does Plaintiff adequately explain why, despite her assent to schedule the July 21 conference, she did not attend it. Plaintiff's invocation of an unspecified "family health crisis" does not impact this conclusion, as Plaintiff made no attempt to apprise the Court of her situation or seek an extension to the deadline set by the Court's July 21 Order. *See Jellinick*, 75 F. App'x at 1002 (explaining the denial of a Rule 60(b) motion was proper where, despite counsel's serious health condition, he failed "at a minimum to seek an extension" or "update[] the court"). Thus, Plaintiff has failed to demonstrate good cause for granting her relief from this Court's judgment of dismissal with prejudice as to all claims in this case.

## Conclusion

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendant TransUnion's Motion to Convert (Doc. 24) be, and the same hereby is, GRANTED; and Plaintiff's Claims against all Defendants are DISMISSED WITH PREJUDICE; and it is

FURTHER ORDERED that Plaintiff's Motion to Vacate and Reinstate Case (Doc. 25), be and the same hereby is, DENIED; and it is

FURTHER ORDERED that Plaintiff's Motion for Leave to File Sur-Reply (Doc. 28), be and the same hereby is, DENIED AS MOOT.

     s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: December 8, 2025